UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

**JEAN POPE FOR G.D., A MINOR,**
Plaintiff,

v.

**CAROLYN COLVIN,**
Defendant.

Case No. 14-cv-3175-YGR

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 24, 27

On July 14, 2014, Jean Pope ("Pope") filed this action on behalf of minor G.D. seeking judicial review of Administrative Law Judge ("ALJ") Jennifer M. Horne's decision finding that G.D. was not entitled to survivor benefits of the insured, Gary Keith Drissell ("Drissell"), as his equitably adopted child under 20 CFR 404.359. Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 24, 27.) Plaintiff argues that the ALJ erred by: (1) relying on an incomplete legal standard to make her determination; and (2) improperly concluding the record did not contain clear and convincing evidence of Drissell's intent to adopt G.D. Based thereon, plaintiff requests remand for an award of benefits.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion for summary judgment.

## I. BACKGROUND

Pope is G.D.'s biological grandmother and legal guardian. (Record at 92, 114). Drissell, the insured, was G.D.'s biological grandfather and Pope's ex-husband. (*Id*. at 94). G.D. was born on April 18, 2007, to Drissell's and Pope's biological daughter, Jennifer Drissell ("Jennifer"). (*Id.*) In October 2007, when G.D. was still an infant, child protective services ("CPS") removed G.D. from Jennifer's care due to neglect, and placed him with Drissell until a more permanent

United States District Court
Northern District of California

placement could be determined. (*Id.* at 81). Pope did not live in the San Francisco Bay Area at the time, but moved back around December 2007 to help Drissell care for G.D. (*Id.*)

Pope and Drissell met with CPS staff on several occasions throughout the ensuing months to discuss Jennifer's behavior and G.D.'s long-term placement. (*Id.* at 161.) In November 2008, the California Superior Court issued a notice of hearing stating that the social worker recommended termination of Jennifer's parental rights and implementation of a plan of adoption. (*Id.* at 90.) Apparently, during a recess at the final hearing held on February 17, 2009, Jennifer "begged" Pope and Drissell not to adopt (*id.* at 168) and thus Pope and Drissell elected to become legal guardians of G.D., thereby affording Jennifer 90 days to improve her behavior. (*Id.* at 81, 92, 170.)

Neither Pope nor Drissell pursued adoption after the 90-day period expired and before Drissell's unexpected passing at the end of 2009. During this time, Drissell was undergoing dialysis, had a toe amputated, and was on the waitlist for a kidney transplant. (*Id.* at 174-76.) At the time of Drissell's death on December 4, 2009, he and Pope were G.D.'s legal guardians. (*Id.* at 81.) Pope made several inquiries about the adoption process following Drissell's passing, but has not yet adopted G.D. (*Id.* at 132.)

On July 30, 2010, plaintiff filed an application for child's insurance survivor benefits on behalf of G.D. based on Drissell's Social Security record. (*Id.* at 23.) The Social Security Administration denied that application on August 14, 2010 finding that "no relationship had been established" by G.D. that would entitle him to benefits on Drissell's record. (*Id.* at 30.) Pope then filed a request for reconsideration, stating that G.D. was entitled to benefits as Drissell's grandchild under 20 CFR 404.364. (*Id.* at 33.) That request for reconsideration was similarly denied. (*Id.* at 34-35.) On July 29, 2011, Pope wrote a letter to the Social Security Administration notifying them of additional information she was able to obtain about G.D's biological parents in support of G.D.'s claim for benefits. (*Id.* at 65-66.) Reconsideration was granted based on that letter and additional information submitted, but the previous decision to deny benefits was again upheld. (*Id.* at 37-39.) On December 14, 2011, Pope filed a request for a hearing before an ALJ. (*Id.* at 42.)

The ALJ hearing was held on September 18, 2012. In a pre-hearing letter brief, counsel for G.D. abandoned his claim to benefits as a grandchild, instead arguing that G.D. was entitled to benefits as Drissell's equitably adopted child under 20 CFR 404.359. (*Id.* at 121-29.) Based on the record, including Pope's testimony at the hearing, the ALJ was ultimately not persuaded that G.D. met the criteria for an equitably adopted child and issued an unfavorable decision. (*Id.* at 8, 14.) The Social Security Appeals Council thereafter denied plaintiff's request for review of the hearing decision. (*Id.* at 4.) This action timely followed.

## II. Applicable Legal Standards

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The Court is entrusted to "review[] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ. *Burch*, 400 F.3d at 679.

## III. Discussion

### A. Legal Framework

A claimant may be entitled to child's benefits on the earnings record of an insured person who is entitled to old-age benefits or who has died if the claimant is the insured's "child, based upon a relationship described in §§ 404.355 through 404.359." 20 CFR § 404.350. In addition to natural born and legally adopted children, a claimant may be eligible if they were equitably adopted by the insured. 20 CFR § 404.359. Section 404.359 provides:

> You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur. The agreement to adopt must be one that would be

> recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will. The agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs. If you apply for child's benefits after the insured's death, the law of the State where the insured had his or her permanent home at the time of his or her death will be followed.

It is undisputed that Mr. Drissell had his permanent home in California at the time of his death and that the California law of equitable adoption controls.

Under California law, "the doctrine of equitable adoption is a relatively narrow one, applying only to those who though having filled the place of a natural born child, through inadvertence or fault have not been legally adopted … [and] where the evidence establishes an intent to adopt." *In re Estate of Ford*, 32 Cal.4th 160, 171 (2004) (internal quotations omitted). California law of equitable adoption, "which [rests] on contract principles, does not recognize an estoppel arising merely from existence of a familial relationship between the decedent and the claimant." *Id*. at 170. Such a rule would be too vague and subjective. *Id*. at 171. Rather, requiring the claimant to show a "particular expression of intent to adopt" and subsequent conduct consistent therewith by the deceased allows for consistent and objective criteria. *Id*. at 170.

Thus, to establish equitable adoption, a claimant must present both: (1) "a statement or act by the decedent unequivocally evincing the decedent's intent to adopt;" and (2) evidence of "objective conduct indicating mutual recognition of an adoptive parent and child relationship to such an extent that in equity and good conscience an adoption should be deemed to have taken place." *Id*. at 171-72 (quoting *In re Estate of Bauer*, 111 Cal.App.3d 554, 560 (1980)). Examples of such objective conduct include facts that: "the adoptee lived with the adoptive parent for a number of years; the adoptee assumed the adoptive parent's surname; the adoptive parent told the adoptee that he or she was adopted; the adoptive parent publicly acknowledged the adoptee as his or her child; the adoptee considered and conducted himself or herself as a natural child; the adoptee worked or performed services for the adoptive parent; and the adoptive parent attempted legally to adopt or obtained guardianship papers for the child." *Estate of Ford*, 32 Cal.4th at 168-69 (quoting *Mingo v. Heckler*, 745 F.2d 537, 539 (9th Cir. 1984)). These factors are "merely

examples" and "the claimant need not demonstrate that [he] satisfies every factor" to establish equitable adoption. *Mingo*, 745 F.2d at 539. To guard against fraudulent claims, California requires that a "claimant must prove a decedent's intent to adopt by clear and convincing evidence." *Estate of Ford*, 32 Cal.4th at 173.

California courts have found this limited doctrine imposing a heightened standard of proof to apply only in very narrow circumstances. For example, the first California court to recognize the doctrine found an equitable adoption where a California couple raised a Texas girl after recording in Texas "a statement that they 'hereby adopt' the child, who was to be their heir and a 'member of our family, with all the rights and privileges as if born to us.'" *In re Estate of Grace*, 88 Cal.App.2d 956, 957 (1948). When an inheritance dispute arose as to the girl's right to inherit from her adoptive grandparents under Texas law, the appellate court upheld the girl's right to inherit based on principles of equitable adoption rooted in contract. Specifically, the Court found that by recording the statement and raising the girl, the parents made an offer to adopt, and "[t]he child, by living with them as a member of the family, accepted the offer," thereby creating a valid contract to adopt in California. *Id.* at 962.

Likewise, the court of appeals recognized an equitable adoption where foster parents took in an eight-year old orphan and raised her as "their little girl," treating her as such until their death. *In Re Estate of Rivolo*, 194 Cal.App.2d 773, 775 (1961). In *Estate of Rivolo*, the parents actually only became the girl's legal guardians, but told her that she was adopted and referred to her as their adopted daughter. *Id.* Based on the record before them, the court found that the girl "was at all times regarded and treated as the adopted daughter of the Rivolos; that they told her and others on numerous occasions that she was legally adopted and would be their sole heir." *Id.* at 777. Thus, the court concluded that "equity demands recognition of her lifelong status as an adopted child…and her inheritance rights [citations]." *Id.* at 778.

By contrast, the California Supreme Court concluded in *Estate of Ford* that substantial evidence supported the trial court's decision that the claimant had not proven intent to adopt sufficient to support his claim to inherit from his foster father. *Estate of Ford*, 32 Cal.4th at 173. There the court did not doubt that a strong familial relationship existed between the claimant and

his foster parents, and in fact, the claimant's connection to the decedent was significantly more robust than that of the distant blood relatives challenging his inheritance. Nevertheless, the court held that the claimant did not present any evidence that the decedent and his wife "ever made any attempt to adopt [the child] or promised or stated their intent to do so; they neither held [the child] out to the world as their natural or adopted child…nor represented to [the child] that he was their child." *Id*. The only evidence in support of their intent to adopt was a "single statement" by the pre-deceased foster mother to a testifying witness, which the trial court did not find to be clear and convincing evidence of the foster parents' intent under the circumstances. *Id*. Thus, the court affirmed the decision of the trial court. *Id*.

**B. The ALJ's Decision**

The ALJ concluded that plaintiff had not established he was entitled to benefits based on Drissell's earnings record under Title II of the Social Security Act. As a preliminary matter, the ALJ noted that plaintiff conceded he was not eligible for grandchild's benefits. The ALJ then addressed plaintiff's new theory of equitable adoption for the greater part of her opinion.

Of particular importance to the ALJ's decision was the absence of any express statement from Drissell of his intent to adopt G.D. The only statements in the record from Drissell directly do not mention his intent to adopt. Instead, the evidence of intent came exclusively from Pope's testimony. Further, had Drissell expressed his intent to adopt to his sister and landlord Mr. Loo, as Pope testified, the ALJ would have expected their written statements to reflect his intention. They did not.

The ALJ also considered the following evidence in her determination: G.D. called Drissell "Dada," but Drissell would not have identified G.D. as his son; Pope and Drissell were careful not to mention adoption in front of G.D.; G.D. did not inherit from Drissell's estate; and Drissell decided to become G.D.'s legal guardian instead of adopting him in February 2009. Although the decision reflects that the ALJ found Pope credible, the ALJ ultimately concluded that the evidence of Drissell's intent to adopt just did not rise to the level of "clear and convincing" as was plaintiff's burden under the applicable standard. In light of this evidence and the record as a whole, Pope's testimony alone could not satisfy the heightened burden of proof.

United States District Court
Northern District of California

**C. Analysis**

Plaintiff argues that the ALJ's decision should not be upheld because: (a) she committed legal error by applying an incomplete standard for equitable adoption; and (b) it was not supported by substantial evidence. Based thereon, plaintiff argues that remand for an award of benefits is proper. In opposition, the Commissioner argues that the ALJ did not err in applying the legal standard for equitable adoption announced in *Estate of Ford*, and the ALJ properly determined that plaintiff did not provide clear and convincing evidence of Drissell's intent to adopt him. The Commissioner maintains that should the ALJ be found to have erred, remand for further administrative proceedings, rather than award of benefits. The Court considers plaintiff's two arguments in turn.

**1. The ALJ's Decision Does Not Contain Legal Error**

Plaintiff contends that the ALJ's decision relied on an incomplete legal standard because she did not quote clarifying language from *Estate of Ford* in its entirety. Specifically, Plaintiff attempts to graft two additional criteria on to the equitable adoption analysis, and then argues that the ALJ failed to address them in her decision. The Court disagrees. As defendants argue, the ALJ explicitly recognized that *Estate of Ford* is the leading authority on the applicable two-part test (i.e. the "agreement-plus-conduct" analysis) for equitable adoption under California law. Indeed, the ALJ's decision reflects that she properly stated and applied the test announced by the California Supreme Court in *Estate of Ford*. The two "important overall criteria" (Dkt. No. 24 ("Mtn.") at 9:5) plaintiff raises are simply redundant of the two-part test applied by the ALJ. In other words, it is the same standard couched in alternative language. The Court finds the ALJ applied the correct legal standard and did not commit legal error.

Plaintiff similarly argues that the ALJ committed legal error because she failed to enumerate and consider every factor of objective conduct outlined by the Ninth Circuit in *Mingo*. Had the ALJ done so, plaintiff argues, she would have found in favor of G.D. This argument is likewise misguided. As discussed above, equitable adoption in California requires the claimant show both a statement by the deceased of his intent to adopt (an "agreement to adopt") and *subsequent* objective conduct in accordance with that statement. *Estate of Ford*, 32 Cal.4th at

168. The *Mingo* factors are used in the second portion of this two-part analysis, or to determine whether the deceased and claimant had a relationship after the agreement to adopt that "in equity and good conscience" should be deemed to be a legal adoption. *Estate of Ford*, 32 Cal.4th at 168 (quoting *Estate of Bauer*, 111 Cal.App.3d at 560). The ALJ, however, determined that plaintiff did not provide clear and convincing evidence that Drissell expressed intent to adopt G.D. in the first instance. Absent intent to adopt, objective conduct showing Drissell's relationship with G.D. could not save plaintiff's claim of equitable adoption.

Moreover, even if the ALJ reached the objective conduct portion of the analysis, her detailed discussion of the record actually addresses the *Mingo* factors without enumerating them. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (the reviewing court is allowed to draw "specific and legitimate inferences from the ALJ's opinion.") For example, the ALJ noted that: G.D. lived with Drissell; Pope testified Drissell did not discuss adoption with G.D., nor did he hold G.D. out as his son in public; and that Drissell did not adopt G.D. when the option was available to him in February 2009. The ALJ therefore considered the *Mingo* factors despite her conclusion that plaintiff failed to meet his burden to show Drissell's intent to adopt.

Accordingly, the ALJ did not commit legal error. Defendant's cross-motion for summary judgment on this ground is **GRANTED**.

### 2. The ALJ's Decision Regarding Lack Of Intent To Adopt Is Supported By Substantial Evidence

Plaintiff argues that the ALJ's analysis of the record was incomplete[1] and her conclusion was therefore not based on substantial evidence. Specifically, plaintiff argues that the following evidence in the record collectively shows Drissell's intent to adopt by clear and convincing evidence: (i) Pope's testimony at the hearing explaining Drissell's intent to adopt; and (ii) the November 5, 2008 report recommending legal adoption for G.D.[2] The Commissioner argues in

[1] As discussed in Section III(C)(1), *supra*, the Court finds that the ALJ did not apply an inappropriate or incomplete legal standard. The Court therefore rejects plaintiff's argument to the extent he contends the ALJ's decision was not supported by substantial evidence because the ALJ committed legal error. (*See* Mtn. at 10-11.)

[2] Plaintiff further argues that the ALJ's decision was not supported by substantial evidence

opposition that the ALJ properly considered this evidence and concluded it did not rise to the level of clear and convincing evidence of Drissell's intent to adopt G.D. legally. Further, the Commissioner argues that the ALJ properly construed three letters as evidence of lack of intent to adopt. The Court considers the referenced evidence in turn.

First, with respect to Pope's hearing testimony, plaintiff points to Pope's statement that Drissell's "position" was that he would adopt G.D. because Jennifer was not a suitable primary caregiver. (Record at 171.) In opposition, the Commissioner highlights Pope's testimony admitting that she and Drissell were presented with the opportunity to adopt G.D., but chose not to at the behest of Jennifer's wishes. (*Id*. at 168-69) Plaintiff argues in reply that this testimony weighs in favor of intent to adopt because, if believed, Drissell made a statement unequivocally evincing his intent to adopt G.D. This argument does not persuade. The standard of review here requires the Court to uphold the ALJ's evaluation of the evidence if the ALJ's view is reasonable. In that regard, the Court finds reasonable the ALJ's view that the statements Drissell made prior to February 2009 are, at best, marginally supportive of plaintiff's view. In fact, Drissel affirmatively chose legal guardianship instead of adoption at the hearing. Thus, Drissell's possible intent to adopt prior to the hearing in February 2009 does not warrant reversal.

The Commissioner also points to Pope's testimony that she and Drissell did not take any action to pursue adoption of G.D. following the February 2009 hearing, but only spoke "off and on" about legally adopting G.D. (*Id*. at 170, 174, 176.) Pope could not recall if Drissell himself made any contact with CPS following the February 2009 hearing to discuss adoption. (*Id*. at 176.) In reply, plaintiff argues that Pope testified that Drissell did not pursue adoption after February 2009 because of his serious medical problems. (*Id*. at 174-75.) While plaintiff's argument is understandable, the ALJ acted reasonably in concluding that the lack of action confirmed that Drissell did not express an intent to adopt during that time.

---

insofar as evidence in the record supports the *Mingo* "objective conduct" factors. For the reasons discussed herein, the Court finds substantial evidence supports the ALJ's decision that Drissell did not express intent to adopt G.D., failing to establish the first portion of the two-part test. Accordingly, an analysis of evidence relative to the second portion of the two-part test (*i.e.*, subsequent objective conduct) is not necessary.

Plaintiff next points to the November 5, 2008 report (*Id*. at 93) by the San Francisco Human Services Agency recommending adoption for G.D. as evidence in support of Drissell's intent. Again, this evidence not only predates February 2009, but plaintiff also does not explain how a statement by the agency evidences Drissell's intent.

Finally, the ALJ addressed three letters in her decision to support her conclusion: (i) a letter Drissell wrote to G.D.'s guardian ad litem dated March 3, 2009;[3] (ii) the December 10, 2010, letter from Drissell's landlord;[4] and (iii) the December 14, 2010, letter from Drissell's sister.[5] The Commissioner argues that the ALJ appropriately construed these letters against claimant. Notably, while they were written by Drissell and those closest to him, they fail to reference any intent by Drissell to adopt G.D. The Court agrees. Plaintiff does not put forth any argument in opposition. Rather, plaintiff only argues that these letters go to Drissell's close familial relationship with G.D., to which there is no material dispute.[6]

Beyond the record before the ALJ, plaintiff implores the Court to consider two pieces of evidence he submitted to the Appeals Council to request a new hearing. First, plaintiff submitted a letter from a daycare provider Gladys Jefferson that states Drissell told her that he and Pope were planning to adopt G.D. (*Id*. at 141.) However, the ALJ did consider similar testimony in her decision. The ALJ specifically included in the decision a reference to Pope's testimony that Drissell told Jefferson that he intended to adopt G.D., and that G.D. would inherit his estate. (*Id*. at 14.) Second, plaintiff submitted emails sent by Pope to CPS in March 2010 regarding legal

---

[3] Record at 87-88. In this letter, Drissell explains his need to obtain a restraining order against Jennifer. Adoption is not addressed.

[4] Record at 84-85. This letter is written by Mr. Loo who likewise does not address adoption, referring instead to Drissell as G.D.'s "legal guardian" and G.D. as Drissell's "dependent."

[5] Record at 86. This letter from Drissell's sister shortly after his death refers to G.D. as Drissell's "grandson." The Court also notes that the ALJ informed counsel at the hearing that an affidavit from Drissell's sister would be helpful evidence, presumably in favor of plaintiff. (*Id*. at 189.) Plaintiff did not submit such an affidavit.

[6] *See* note 2, *supra*.



United States District Court
Northern District of California

adoption of G.D., stating that she "now want[ed] to upgrade" from legal guardianship to adoption and asking for assistance with the cost. (*Id.* at 143.) These emails only bolster the ALJ's conclusion that Drissell did not previously intend to adopt G.D. Thus, even if these additional documents were considered, a reasonable person could still conclude that the record does not contain sufficient evidence of intent to adopt.

Considering the record as a whole, the Court finds that the record contains substantial evidence to support the ALJ's decision. The record reflects that the facts here are distinguishable from those in *Estate of Grace* and *Estate of Rivolo*, and are in fact quite similar to those in *Estate of Ford*. The Court agrees with the ALJ that the only evidence of Drissell's intent comes from Pope's testimony at the hearing. Again, the Court notes that the result is not an issue of credibility. Rather, in light of the balance of the record evidence, including the evidence highlighted by plaintiff and the Commissioner and discussed herein, the ALJ reasonably concluded that insufficient evidence existed to show intent to adopt G.D. Furthermore, the evidence submitted by plaintiff to the Appeals Council does not support a different conclusion.

Accordingly, the defendant's cross-motion on this ground is also **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

This Order terminates this case.

**IT IS SO ORDERED.**

Dated: August 20, 2015

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE